UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 19-CR-75 (RMM/JDB) |
| | : | |
| v. | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| DARRIN CHASE, JR., | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its request that the defendant be detained pending trial.

## Introduction

The defendant is charged by indictment with several offenses including Hobbs Act Robbery, 18 U.S.C. § 1951, Possession with Intent to Distribute Oxycodone, Hydrocodone, and Marijuana, 21 U.S.C. § 841, Use of a Firearm During a Crime of Violence or Drug Trafficking Offense, 18 U.S.C. § 924(c), Armed Robbery, D.C. Code §§ 22-2801, 4502, and Possession of Firearm During a Crime of Violence, D.C. Code § 22-4504(b).  These charges arise from the armed robbery of the Palisades Pharmacy located in the 5100 block of MacArthur Blvd., N.W., Washington, D.C. on December 4, 2018.

On that date, at approximately 10:30 a.m., the defendant entered the pharmacy.  He was the only customer in the store.  He walked to the cash registers, reached into a duffel bag he had

been carrying and pulled out a short, double-barreled shotgun.   He pointed the shotgun at a pharmacy employee and demanded, "OxyContin! Sub Oxone!"

The defendant then walked behind the counter and into the pharmaceutical area which is directly behind the cash registers.   He pointed the shotgun at two other pharmacy employees who were working there and again demanded, "Oxycodone, Codeine, Sub Oxone!"   The employees complied with the defendant's demands.   He took over twelve bottles of controlled substance medications from the pharmacy.

The defendant left the store.   An employee called 911 while another employee followed the defendant from a safe distance.   This second employee saw the defendant cross MacArthur Blvd., and signal to a white Mercedes SUV.   The SUV stopped, and the defendant got into the rear passenger seat.   The SUV made a U-turn and before making a right turn on Arizona Avenue, N.W.   The employee was able to take a photo of the SUV, and he relayed the license plate to the 911 operator.

Shortly afterwards, officers stopped the SUV in the 5200 block of Connecticut Avenue, N.W.   The officers quickly realized that it was an Uber vehicle and that the defendant was no longer in the back seat.   The Uber driver recalled picking up a fare in the 5100 block of MacArthur Blvd., N.W., around 10:35 a.m.   The driver said that she was expecting a female rider.   The passenger, a young black male said, "My girlfriend ordered the Uber.   I'm in a rush."   The driver told the defendant she was not going over the speed limit, and she dropped the defendant off near the Friendship Heights Metro Station.

Officers were able to obtain video and still photographs from metro of an individual matching the defendant's description entering the Friendship Heights Metro.   Metro Transit

Police also provided still photographs of the defendant exiting the Twinbrook Metro Station at approximately 11:00 a.m.  The Uber driver indicated the photos looked like her fare that morning.  With her help, officers were able to determine the Uber that had been used to contact her that morning for a ride from MacArthur Blvd.

The account holder is the defendant's 18-year old girlfriend.  She confirmed that her account was used that morning for a ride from MacArthur to the Friendship Heights Metro, that the defendant has the Uber app on his cell phone, and that only she and the defendant have access to the account.  She also identified the defendant in the stills from the metro video.  The store employees viewed video of a suspect from the metro posted by the police department, and each of employees believed that was the person who had robbed the store at gun point.

On or about December 7, 2018, police officers obtained a GPS warrant for the defendant's cell phone.  They were able to use the information to locate the defendant at approximately 11 p.m. at this grandmother's house in the 6100 block of 14th Street, N.W.  A detective found the defendant there hiding on a patio that faces an alley.

In executing an emergency search warrant for the house early the next morning, officers found—within three feet of where they found the defendant--approximately $1,160 in cash and a grey duffel bag containing five bottles of Oxycodone and OxyContin and approximately ½ a pound of high-grade marijuana.  By comparing the lot numbers and/or UPC numbers on the bottles with the DEA loss report filed by the pharmacy, it is clear that at least three of the bottles were stolen from the pharmacy.  (The labels on the other two bottles are partially missing, but the pharmacy employees believe the other two bottles were also stolen based on the brand and the handwriting on the bottles.) In total, the defendant stole 14 bottles containing 1,640 pills from

3

the pharmacy. Officers found only 159 pills in the search. Finally, a drug expert would testify that the marijuana found would sell for approximately $2,000-$2,500 and that ½ pound of marijuana is consistent with an intent to distribute.

## Applicable Law

A consideration of the four factors under Section 3142(g) that guide the Court's detention decision─(1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) her history and characteristics of the defendant; and (4) the nature and seriousness of the danger posed to the community by the defendant's release ─strongly support the need for and wisdom of detaining the defendant. See 18 U.S.C. § 3142(g).

## Argument

**I.     The defendant presents a serious danger to the community.**

   A.     Nature and Circumstances of the Offenses Charged

The defendant is charged with several serious offenses including serious drug offenses and use of a firearm in committing a violent crime or drug trafficking offense. Not surprisingly, there is a presumption that he be held without bond accordingly. See 18 U.S.C. § 3142(e)(3)(A)(B) .

   B.     Weight of the Evidence against the Defendant

The evidence against the defendant is very strong. As noted above, multiple witnesses identified the defendant based on video from the metro system. In addition, the Uber account information (along with information from the Uber account holder) indicates that the defendant

was the person who contacted the Uber used to flee the robbery scene. Finally, officers located approximately $1,100 and several of the bottles stolen from the pharmacy within a few feet of where the defendant was arrested.

        C.        The Defendant's History and Characteristics

As set forth in the Pretrial Services Report, the defendant has only two prior convictions—one for theft and one for second degree assault in Maryland. However, the defendant was under supervision at the time he committed this offense.

        D.        Danger to the Community

The charged offenses in this case demonstrate that the defendant is a danger to the community. The defendant was originally charged in Superior Court following his arrest, and he was held without bond in that case.

**WHEREFORE**, we respectfully request that the Court order that the defendant be held pending trial in this matter.

        Respectfully submitted,

        JESSIE K. LIU,
        UNITED STATES ATTORNEY


        /s/ *Nihar Mohanty*
        NIHAR R. MOHANTY
        Assistant United States Attorney
        D.C. bar No. 436-686
        555 4th Street, N.W.
        Room 4120
        Washington, D.C.   20530
        (202) 252-7700